IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ASHLEY N. LONG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:16-cv-592 |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Ashley N. Long ("Long") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disabled adult child benefits ("DACB") under the Social Security Act ("Act"). 42 U.S.C. §§ 402(d), 1381–1383f. Specifically, Long alleges that the ALJ erred by failing to give the opinions of her treating physicians controlling weight. I conclude that the ALJ erred when he declined to accord the opinions of Long's treating physicians controlling weight. Accordingly, I **RECOMMEND GRANTING** Long's Motion for Summary Judgment (Dkt. No. 15) and **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 11).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Long failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Long protectively filed for SSI and DACB on May 26, 2012, claiming that her disability began on August 24, 2009. R. 67. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 78–143. On May 1, 2015, ALJ Joseph T. Scruton held an administrative hearing to consider Long's disability claim. R. 35–66. Long was represented by an attorney at the hearing, which included testimony from Long and vocational expert Ashley Wells. Id.

On July 28, 2015, the ALJ entered his decision analyzing Long's claim under the familiar five-step process,[2] and denying Long's claim for disability. R. 13–26. The ALJ found that Long suffered from the severe impairments of: mild-to-moderate lumbar spine degenerative disease, fibromyalgia, 2014 onset of diabetes mellitus 2, hypertension, morbid obesity, history of mid-

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2014 wrist sprain, asthma, and generalized osteoarthritis. R. 17. The ALJ further found that Long retained the RFC to perform a range of sedentary work, but she is restricted to occasionally or frequently lifting and/or carrying ten pounds; occasionally stooping, crouching, and balancing; never kneeling, climbing, or crawling; should avoid operation of foot controls; and should avoid even moderate exposure to pulmonary irritants. R. 22. The ALJ determined that Long could not return to her past relevant work as a babysitter, but that she could work at jobs that exist in significant numbers in the national economy, such as assembler, weight tester, and cuff holder. R. 25. Thus, the ALJ concluded that Long was not disabled. Id.

Long appealed the ALJ's decision to the Appeals Council, but her request for review was subsequently denied. R. 1–3. This appeal followed.

## **ANALYSIS**

Long argues that the ALJ erred by giving limited weight to the opinions of treating physicians Michael Camardi, M.D., and Joseph Lemmer, M.D., instead giving greater weight to Ericka Young, D.O., a consultative examiner. R. 23–24.

Dr. Camardi stated in his medical opinion that Long can sit, stand, and/or walk less than two hours in an eight-hour workday, can never lift and carry anything over ten pounds, and will miss work more than four times every month. R. 628–29. Dr. Camardi explained that Long's pain would constantly interfere with her attention and concentration on the job. R. 628. Dr. Camardi stated that based on his treatment of Long and her history, the limitations related back to May 26, 2012—the date Long applied for Social Security benefits. R. 629. Dr. Camardi is Long's primary care physician and has been treating her since October 2014. R. 45. The ALJ accorded Dr. Camardi's opinion only "slight weight." R. 23.

3

Dr. Lemmer, who has treated Long since April 2013, rendered a similar opinion, stating that Long can sit, stand, and/or walk less than two hours in an eight-hour workday, can never lift and carry anything over fifty pounds, can rarely lift and carry anything over twenty pounds, and can occasionally lift and carry things weighing ten pounds or less. R. 626. Dr. Lemmer explained that Long has significant limitations in repetitive reaching, handling, and fingering, and she can only rarely twist, stoop, crouch, climb ladders, and climb stairs. Id. Dr. Lemmer stated that Long's pain would frequently interfere with her attention and concentration on the job, and he expected Long to miss work at least four times a month. R. 625–26. The ALJ accorded Dr. Lemmer's opinion only "slight" weight. R. 23.

The ALJ gave significant weight to the functional assessment of Ericka Young, D.O., rendered in January 2010 regarding Long's previous claim for disability. R. 23. Dr. Young stated:

> [Long] could stand or walk approximately six hours in an eight-hour workday. . . . There would be no restrictions on sitting. No assistive devices would be needed or used. There would be no lifting or carrying limitations. There would be postural limitations with stooping and crouching due to pain in the right foot but only occasionally. There would be no manipulative limitations.

R. 311.

A treating physician's opinion which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record" will receive controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. Id.; Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the

4

following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r Soc. Sec. Admin., No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam)).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Before the relevant period,[3] Long was involved in a motor vehicle accident on December 4, 2008 and went to the hospital the next day for treatment of neck and chest pain. R. 296. The ER physician found no abnormalities in Long's chest and neck exam, but she did have muscle spasms around her spine. R. 299–300. Long was prescribed hydrocodone for her pain. R. 298.

---

[3] The relevant period begins on January 30, 2010—the date the previous disability determination became final—and runs through the date of the ALJ's decision, July 28, 2015.

5

Six years later, on May 31, 2014, Long was involved in another motor vehicle accident, and sought medical treatment from Peter Bruzzo, D.O., for lumbar back pain later that day. R. 649. Dr. Bruzzo had X-rays taken which were negative. Dr. Bruzzo concluded that Long "clinically presents as nonspecific mechanical low back pain likely related to muscle strain or spasm." R. 651. Long returned two days later with complaints of worsening back and neck pain despite taking her pain medications as prescribed. R. 654. Eventually, Long had an MRI of her spine in January 2015, which was normal except for "very mild disc height loss" at L5-S1 and "[b]road-based LEFT paracentral disc protrusion." R. 420.

Long sought treatment following the motor vehicle accident in May 2014 from Courtney Rocovich, D.O., for left wrist pain. R. 656. Dr. Rocovich diagnosed a simple contusion. Id. Her examination showed "no deformities" and X-rays revealed no fractures or dislocation. Id. In June 2014, Long complained of worsening wrist pain. R. 571. She saw Dallas Crickenberger, M.D., in September 2014 who found no fractures or dislocation and diagnosed Long's wrist pain as stemming from a contusion and wrist sprain. R. 500. Dr. Crickenberger mentioned that she has "some weakness and pain with a firm grip [and s]he drops objects at times." R. 501.

Long began physical therapy on September 18, 2014 for "aching, sharp or stabbing [pain] . . . located . . . across the lower back." R. 668. She completed aquatic therapy and a home exercise plan. R. 672. Long's "compliance with therapy [was] good," but she continued to complain of increased pain in her back and overall displayed poor progress. R. 676–80. The physical therapist stated that Long's sedentary lifestyle was "counterproductive" to making progress in her treatment. R. 680. Long explained that she experiences great pain when she walks. R. 689. Long continued to complain of worsening back pain, which affected her sleep. R. 668–96. Ultimately, Long stated that she did not believe that physical therapy was helping her

6

symptoms. Id. The physical therapist noted that Long complained of "high levels of pain," but that her "physical movement abilities do not correlate with these ratings." R. 696.

Throughout the relevant period, Long suffered from morbid obesity, diabetes, and asthma. See R. 296 (acknowledging history of asthma); id. (weight is 285 pounds at 17 years old); R. 455 (diagnosis of diabetes); R. 698–99 (weight is 437 pounds at 23 years old). Under SSR 02-1p, Long greatly exceeds the body mass index ("BMI") requirement of 40 or above to be placed in the level III column of obesity (termed "extreme obesity") with a BMI of 62.7 as of March 10, 2015. R. 698–99. Additionally, Dr. Lemmer diagnosed Long with fibromyalgia in 2015. R. 625.

Long argues that "[t]he ALJ identifies no records in the denial decision that actually contradict the opinions of her treating physicians, and, in fact, the denial decision addresses their opinions in a wholly conclusory manner." Dkt. No. 15, at 11. Long further contends that "there is no indication that the ALJ considered all of the . . . factors [listed in 20 C.F.R. § 404.1527(c)(2), which concerns treating physicians], most of which would have weighed in favor of giving 'great' weigh [sic] to the opinions of Dr. Camardi and Dr. Lemmer." Dkt. No. 16, at 10.

I find that the ALJ erred when he declined to give the opinions of Long's treating physicians controlling weight. The ALJ's analysis does not satisfy obligation under 20 C.F.R. § 404.1527(c)(2) to give "good reasons" for declining to accord controlling weight to Drs. Camardi's and Lemmer's opinions. The ALJ detailed Long's medical history, but did not identify evidence which showed that Drs. Camardi and Lemmer assigned limitations which were inconsistent with the record. Nor did the ALJ sufficiently explain why Drs. Camardi's and Lemmer's opinions were not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2).

7

The ALJ declined to give controlling weight to Dr. Camardi's opinion because Dr. Camardi stated that his functional assessment relates back to 2009 and because Long's "diagnosis of diabetes had been made in late 2014, and there had been no definitive diagnosis of fibromyalgia prior to it having been mentioned as diagnosed in 2013." R. 23. The ALJ concluded by stating that "[i]t is . . . difficult to reconcile this timeline with Dr. Camardi's statement that [Long's] symptoms from these, and other, impairments had persisted since 2009." Id. Similarly, the ALJ attributed only slight weight to Dr. Lemmer's fibromyalgia functional assessment. Id. The ALJ stated that "Dr. Lemmer's assessment does not make any attempt to distinguish the effects of [Long's mild-to-moderate degenerative disease of the lumbar spine] from those of fibromyalgia." Id. The ALJ concluded his brief discussion of Drs. Lemmer's and Camardi's medical opinions by explaining that although both Drs. Lemmer's and Camardi's opinions impose limitations that are consistent with Long's testimony that she is sedentary "around 90 percent" of the day, their analysis is "not corroborated by the evidence of [Long's] daily activities." Id.

The ALJ criticized Dr. Camardi's opinion for a timeline that is "difficult to reconcile and for including impairments which had been diagnosed relatively late into the relevant period." Id. The ALJ accorded "significant weight" to the opinion of Dr. Young, which was rendered only five days before the relevant period began, on January 25, 2010. R. 309. The ALJ stated that Dr. Young's opinion is accorded significant weight "at least for the period for which it was prepared." Id. Dr. Young was not Long's treating source and only saw her once, while Dr. Camardi saw Long multiple times since October 2014. In fact, the Social Security Regulations explain that the opinions of treating sources are generally given more weight than "consultative examinations or brief hospitalizations" because treating physicians can provide a "detailed,

8

longitudinal picture" and a "unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). Here, the ALJ relied on a consultative examination that was rendered before the relevant period without giving sufficiently good reasons for rejecting the opinion of one of Long's treating sources and without identifying evidence that contradicts that opinion.

The ALJ criticized Dr. Lemmer's fibromyalgia functional assessment, asserting that there was no clear demarcation of the effects of Long's mild-to-moderate lumbar spine degeneration and fibromyalgia. R. 23. However, there is nothing in Dr. Lemmer's assessment that blurs the lines between fibromyalgia and spine degeneration. The opinion is entitled "Fibromyalgia Residual Functional Capacity Questionnaire" and does not mention the words "spine," "back," or "degeneration." R. 625–27. On the first page of the assessment, Dr. Lemmer stated that Long suffers from many symptoms attributable to fibromyalgia, including tender points, poor sleep, chronic fatigue, muscle weakness, frequent and severe headaches, anxiety, and depression. R. 625. Additionally, the ALJ found that Long had severe impairments from both spine degeneration and fibromyalgia, so even if Dr. Lemmer's functional assessment included symptoms stemming from both impairments, it would not indicate that Dr. Lemmer's opinion is not credible. This is not a good reason for declining to accord Dr. Lemmer's opinion controlling weight.

Finally, the ALJ explained that the evidence of Long's daily activities does not support Dr. Camardi's, Dr. Lemmer's, and Long's testimony that she is sedentary "around 90 percent of the day." R. 23. In his RFC section, the ALJ listed three daily activities that he indicated were inconsistent with the opinions of Long's two treating physicians: walking, aquatic exercise, and physical therapy. R. 22. However, Long was only in physical therapy for one month—from September 18, 2014 to October 21, 2014—and physical therapy only occurred three times a

9

week for around fifty-five minutes at a time. See R. 672–94. Additionally, aquatic exercise was part of the physical therapy regimen, not an additional activity. See id. The ALJ never pointed to any evidence in the record which showed her walking daily. In fact, Long testified at the administrative hearing that she is "97 percent" confined to a bed, only getting up to go to the bathroom. R. 52.

The ALJ did not provide "good reasons" for declining to accord controlling weight to the opinions of Long's treating physicians, and the ALJ identified no evidence which shows that the opinions of Drs. Camardi and Lemmer are "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Like the ALJ in Brown, the ALJ in Long's case "effectively turned the [treating physician rule] on its head, deferring to [a physician, Dr. Young,] who had never laid on eyes on [Long] while dismissing the opinions of those who had examined and treated [her many] times." Brown, 873 F.3d at 268. Because good reasons were not given for the ALJ's deference to Dr. Young and his rejection of controlling weight to Long's treating physicians and because no inconsistent evidence was identified that contradicted Drs. Camardi's and Lemmer's opinions, "the analysis is incomplete and precludes meaningful review." Knapp, 2016 WL 4447836, at *3 (quoting Monroe, 826 F.3d at 191). Therefore, "an accurate and logical bridge" was not constructed from the evidence to the ALJ's conclusion that Drs. Camardi's and Lemmer's opinions were undeserving of controlling weight under the treating physician rule, and remand is appropriate. Monroe, F.3d at 189.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence does not support the ALJ's opinion. Accordingly,

I conclude that Long's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that this case be **REMANDED**.

The Clerk is directed to transmit the record in this case to Glen E. Conrad, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 13, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge